# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Nov 07, 2022

IN RE:

**ANTHONY J. PHILLIPS and
JENNY G. PHILLIPS,**

       **Debtors.**

Case No. 22-10167-M
Chapter 7

---

**AUDREY BENTLY formerly
AUDREY PHILLIPS,**

       **Plaintiff,**

**v.**

**ANTHONY J. PHILLIPS,**

       **Defendant.**

Adv. Proc. No. 22-01009-M

## MEMORANDUM OPINION

A divorce is an untangling of lives, simple in concept and complex in execution. The idea is simple: two people, once married, divide their assets and liabilities, determine what (if any) obligations will continue between them, and move on. The devil is in the details.

In this case, Audrey Bently ("Ms. Bently") and Anthony Phillips ("Mr. Phillips") were married for approximately five years. During their marriage, they had separate credit cards and a joint bank account. When they divorced, they kept their separate credit cards, and Ms. Bently kept the joint bank account, after paying Mr. Phillips his share of the funds in the account. Unfortunately, Ms. Bently was unable to remove Mr. Phillips's name from the joint account. A most devilish detail indeed, made even more so when, almost ten years after the parties divorced, a separate creditor of Mr. Phillips swooped in and garnished almost $19,000 of Ms. Bently's

money from the account to pay a debt owed by Mr. Phillips. To describe Ms. Bently as chagrined by this chain of events would be an understatement.

Mr. Phillips is now a debtor in this court. He seeks to have any obligation he owes to Ms. Bently discharged, the effect of which would be to use her funds to pay his debt. The question is whether the terms of the parties' divorce decree and the United States Bankruptcy Code allow him to do so. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052.

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.[1]  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a).  The determination of the dischargeability of a debt is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

## Findings of Fact

The facts governing this adversary proceeding are straightforward. Ms. Bently and Mr. Phillips were married in 2006. The relationship soured, and the parties separated in 2011. At the time of their separation, each had separate credit cards, while sharing a bank account at Spirit Bank (the "Spirit Bank Account"). The Spirit Bank Account had both Ms. Bently's and Mr. Phillips's name on it. Mr. Phillips had a credit card from Navy Federal Credit Union ("Navy Federal") solely in his own name (the "Navy Federal Card"). The Spirit Bank Account and the Navy Federal Card lie at the heart of this case.

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

Ultimately, a divorce action was filed by Mr. Phillips in Tulsa County District Court (the "Divorce Action"). Neither party hired counsel in the Divorce Action, choosing instead to rely upon a non-lawyer divorce documentation service known as Payless Divorce. A Decree of Divorce (the "Decree") was entered in the Divorce Action on January 20, 2012. It contained the following provisions (the "Hold Harmless Provisions"):

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the liabilities and debts of the parties hereto be paid as set forth below and that each of the respective parties hereto hold the other harmless as to the recourse of the creditors on the liabilities and debts for which he or she is responsible as set forth below, and that each of the respective liabilities and debts of which the other was unaware at the time of filing of the Petition or which were incurred subsequent to the filing of the Petition.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each of the parties hereto shall be responsible for all debts that are in their respective name.[2]

The Decree made no specific mention of the Navy Federal Card or the Spirit Bank Account.[3] The Decree also provided that "each of the parties hereto shall be awarded all personal property that is in their respective possession."[4] Both parties testified that, pursuant to the Decree, Ms. Bently kept the Spirit Bank Account after paying Mr. Phillips one-half of the sums contained therein at the time of the Decree. Unfortunately, Mr. Phillips's name was never removed from the Spirit Bank Account.[5]

---

[2] *Plaintiff's Exh. 2.*

[3] The lack of specificity is unfortunate but not determinative. An entity known as "Payless Divorce" cannot be expected to write the Magna Carta.

[4] *Plaintiff's Exh. 2.*

[5] The Court uses the word "unfortunately" because, had Mr. Phillips taken the steps to remove his name from the Spirit Bank Account, the parties would have gone on with their lives without the necessity of this litigation.

Ms. Bently requested Mr. Phillips take the necessary steps to remove his name from the Spirit Bank Account, and he never did so.[6] Ms. Bently continued to use the Spirit Bank Account as her primary bank account after the Decree was entered.

At the time the Decree was entered, the balance due on the Navy Federal Card was approximately $2,300. Mr. Phillips continued to use the Navy Federal Card and, although he made payments on the card, the amount due grew and grew and grew until the middle of 2019, at which time Navy Federal Credit Union closed the account and suspended all charging privileges.[7] Later that year, Navy Federal filed suit against Mr. Phillips to collect the amounts due under the Navy Federal Card. On April 17, 2020, Navy Federal was awarded judgment against Mr. Phillips in the amount of $18,901.73 (the "Navy Federal Debt").

Armed with its judgment, Navy Federal set out to do what all creditors set out to do: collect. Navy Federal discovered the Spirit Bank Account and issued a garnishment summons to Spirit Bank. Spirit Bank answered the garnishment summons and disclosed the existence of the Spirit Bank Account, informing Navy Federal that said account contained $18,901.73 in "unprotected funds."[8] Navy Federal swooped in, collected its debt in full, and later filed a release and satisfaction of judgment.[9] Ms. Bently was not notified that the garnishment summons had been issued, discovering what had happened only after her moneys had been taken.

---

[6] This was the only factual dispute at trial. Ms. Bently testified that she asked Mr. Phillips to remove himself from the Spirit Bank Account, while Mr. Phillips testified no such request was ever made. The Court finds the testimony of Ms. Bently to be more credible and finds as a matter of fact that Ms. Bently asked Mr. Phillips to remove his name from the Spirit Bank Account.

[7] *Defendant's Exh. 9-81.*

[8] *Plaintiff's Exh. 4.* The Spirit Bank Account contained more than $25,600 at the time of garnishment. *Plaintiff's Exh. 5.*

[9] *Plaintiff's Exh. 6.*

Being less than amused, Ms. Bently filed a motion for contempt in the Divorce Action, seeking an order directing Mr. Phillips to repay the moneys taken by Navy Federal. Litigation and mediation ensued, but the matter was never resolved.[10] On March 7, 2022, Mr. Phillips and his current wife (the "Phillips") filed a voluntary petition under Chapter 7 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Oklahoma. In their schedules, the Phillips listed both Navy Federal and Ms. Bently as unsecured creditors in the amount of $18,901.73. The Navy Federal claim was listed as undisputed, while Ms. Bently's claim was listed as disputed, with the explanation that "judgement [*sic*] creditor garnished her bank account to pay debtor's judgement [*sic*]."

To the extent the "Conclusions of Law" contain any misplaced findings of fact, those findings are incorporated herein by this reference.

### Burden of Proof

Exceptions to discharge are to be narrowly construed in favor of the debtor in order to promote the "fresh start" policy of the Bankruptcy Code.[11] Under § 523, a creditor seeking to except its claim from discharge must prove its case by a preponderance of the evidence.[12]

### Conclusions of Law

Ms. Bently wants her money back. She contends that garnishment of the Spirit Bank Account violates the Hold Harmless Provisions, and that Mr. Phillips's obligations thereunder are not dischargeable in bankruptcy under either § 523(a)(5) or (a)(15) of the Bankruptcy Code. Mr. Phillips claims the Hold Harmless Provisions apply only to debts in existence at the time the

---

[10] The parties introduced evidence regarding their efforts to resolve this dispute through mediation. This evidence, although admitted without objection, is not relevant to the issues before the Court.
[11] *See Jones v. Jones (In re Jones),* 9 F.3d 878, 880 (10th Cir. 1993).
[12] *See Grogan v. Garner,* 498 U.S. 279, 287 (1991).

Decree was entered, and that the balance due on the Navy Federal Card at the time the Decree was entered has long since been paid off. As a result, the argument continues, any obligation he owes to Ms. Bently is at most a general unsecured claim, subject to discharge in this case.

Section 523(a)(5) of the Bankruptcy Code excepts "domestic support obligations" from discharge.[13] In order to be considered a "domestic support obligation," the obligation in a divorce decree must be in the nature of "alimony, maintenance, or support."[14] The Court was presented no evidence as to the nature of the Navy Federal Debt but notes that most of said debt was incurred after the parties divorced. For those reasons, the Court does not consider § 523(a)(5) applicable in this adversary proceeding.

Given the inapplicability of § 523(a)(5), the Court considers whether Mr. Phillips's obligations to Ms. Bently under the Decree are nondischaregable under § 523(a)(15). That section excepts from discharge any debt

> to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.][15]

In order to be excepted from discharge under this section, the debt must: 1) be to a spouse, former spouse, or child of the debtor; 2) not be of the type described in paragraph (5) of § 523(a), that is, must not be a domestic support obligation; and 3) have been incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court of record.[16] Ms. Bently must establish each of these elements by a preponderance of the evidence.

---

[13] § 523(a)(5).
[14] § 101(14A)(B).
[15] § 523(a)(15).
[16] *See In re Schweitzer*, 370 B.R. 145, 150 (Bankr. S.D. Ohio 2007).

The first two elements under § 523(a)(15) are easily satisfied. Ms. Bently is the former spouse of Mr. Phillips and, as noted *supra*, the Court has determined that § 523(a)(5) does not apply. In order to determine whether the third prong of the § 523(a)(15) test has been met, the Court must decide whether the Navy Federal Debt is encompassed within the Hold Harmless Provisions. Fortunately, there is ample authority available for the Court's consideration.

Whether the obligation of one ex-spouse to hold the other ex-spouse harmless for his or her separate debts is a "debt" for purposes of the Bankruptcy Code is a question determined by state law.[17] In the state of Oklahoma, if a party to a divorce action fails to abide by the terms of a decree of divorce, including hold harmless provisions with respect to debt, the divorce court may enforce the decree as a judgment, using its powers of indirect contempt.[18] Therefore, Mr. Phillips's hold harmless obligations under the Decree constitute a debt for purposes of the Bankruptcy Code, and specifically for purposes of § 523(a)(15).

Mr. Phillips argues that, since all or most of the Navy Federal Debt was incurred after the Decree was entered, it falls outside the scope of the Decree and is merely a general unsecured debt. Mr. Phillips offers no authority for his position, quite possibly because there is none. On the other hand, several courts have held that the hold harmless provisions in a divorce decree extend beyond the debt owed by the parties at the time of the divorce. In *In re Schweitzer*,[19] the divorcing parties entered into a separation agreement expressly prohibiting either party from using the credit of the

---

[17] *In re Wodark*, 425 B.R. 834, 839 (10th Cir. BAP 2010) (and cases cited therein).

[18] Okla. Stat. tit. 43, § 111. *See also Robinson v. McDaniel*, 795 P.2d 513, 515 (Okla. 1990); *Dickson v. Dickson*, 637 P.2d 110, 113 (Okla. 1981) ("Contempt proceedings may be had to enforce any order of the court incorporated in a decree of divorce for the payment of money, whether the order arose from the agreement between the parties or the court made such order absent the agreement of the parties."); *Reidel v. Reidel*, 844 P.2d 184, 186 n.7 (Okla. Civ. App. 1996) (same).

[19] 370 B.R. 145 (Bankr. N.D. Ohio 2007).

other, and stating that, if such credit misuse occurred, "the spouse incurring the debt would 'save the other absolutely harmless from any debt or obligation so charged or otherwise incurred.'"[20] After a divorce decree incorporating this provision was entered, the ex-wife incurred substantial post-divorce charges on a joint credit card account. In holding the amount of the credit card charges nondischargeable under § 523(a)(15), the Court noted that

> The Separation Agreement expressly prohibits either spouse from using the other's credit. It also provides for indemnification if such debts are incurred in violation of this provision. The situation that gives rise to this adversary proceeding—in which Deborah has incurred debt for which Vincent maybe held jointly liable—is precisely the type of scenario that hold harmless provision was intended to address. The fact that the underlying debts were incurred months after the divorce thus has no bearing on whether Deborah's obligation to hold Vincent harmless on those debts is dischargeable.[21]

Although the facts of *Schweitzer* are not directly analogous to the facts at bar, the principle expressed therein is applicable to this case. In *Schweitzer*, the debtor used her husband's credit to her benefit and his detriment, costing him thousands of dollars, all in express violation of the separation agreement. Here, Mr. Phillips took matters one step further. As a result of his failure to pay his own debts (and to remove himself as a party to the Spirit Bank Account), he took not Ms. Bently's credit, but her cash, in violation of the Hold Harmless Provisions. The fact that he did so years after the divorce was final is irrelevant.

In *In re Finkey*,[22] the ex-husband debtor incurred $11,754.40 in credit card charges on a card that remained in both parties' names after the divorce. He later filed a Chapter 7 bankruptcy case, and his ex-wife filed an adversary proceeding to have this debt declared nondischargeable under § 523(a)(15). The ex-husband defended on the basis that the debt was incurred post-decree,

---

[20] *Id.* at 150.
[21] *Id.* at 153.
[22] 2008 WL 2165979 (Bankr. D. Neb. May 21, 2008).

8

and therefore could not have been within the scope of the decree. The bankruptcy court soundly rejected the argument, noting that "courts do not hesitate to except from discharge debts incurred by a debtor spouse—even after the divorce—which he or she then attempts to discharge to the detriment of the non-debtor spouse."[23]

In *Schmitt v. Eubanks (In re Schmitt)*,[24] the decree at issue contained no "hold harmless" provisions, but rather a statement that "[e]ach party shall pay any debt incurred by said party subsequent to separation on July 8, 1991."[25] After the date of separation, the estranged wife continued to use credit cards in the name of both parties, eventually defaulting on the same, and ultimately seeking relief under Chapter 7 of the Bankruptcy Code. Even though there was no express hold harmless provision, the court found it "clear from the context and the documents that the parties agreed to, and were ordered to, bear their apportioned debts and hold the other harmless from payment."[26] The court went on to find that the debtor had a duty to hold his ex-spouse harmless from the debts incurred post separation, and that this debt was nondischargeable under § 523(a)(15).

In this case, the Hold Harmless Provisions, while perhaps not the most skillfully drafted, unequivocally state that each party shall hold the other harmless and "shall be responsible for all debts in their respective name."[27] Mr. Phillips has done neither. He has not paid his debt to Navy Federal, and he has not held Ms. Bently harmless from the same. He has benefited by seeing her moneys pay his debt. Mr. Phillips has an obligation to hold Ms. Bently harmless from the Navy

---

[23] *Id.* at *3.
[24] 197 B.R. 312 (Bankr. W.D. Ark. 1996).
[25] *Id.* at 314.
[26] *Id.* at 316.
[27] *Plaintiff's Exhibit 2.*

Federal Debt, and that obligation is not dischargeable under § 523(a)(15) and the applicable case law.

## Conclusion

Under the Divorce Decree, Mr. Phillips is legally obligated to hold Ms. Bently harmless from the Navy Federal Debt. He has failed to do so. Ms. Bently has a nondischargeable claim against him for all moneys paid to Navy Federal, together with any other amounts the Divorce Court may award her for fees incurred as a result of his failure to hold her harmless.[28]

A separate judgment consistent with this Memorandum Opinion shall be entered concurrently herewith.

Dated this 7th day of November, 2022.

BY THE COURT:

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

7766

---

[28] *See Polishuk v. Polishuk (In re Polishuk)*, 243 B.R. 408, 421 (Bankr. N.D. Okla. 1999), *affirmed,* District Court No. 99-CV-901-C(J) (slip op. October 19, 2000) (holding that if an underlying debt is nondischargeable, where fees are allowed under state law, those fees are also nondischargeable).